1

2

3                          UNITED STATES DISTRICT COURT

4                               DISTRICT OF NEVADA

5                                    * * *
                                      )
6   CURTIS WIMBERLY,                  )
                                      )          2:11-CV-00430-PMP-LRL
7                  Plaintiff,         )
                                      )          ORDER
8    v.                               )
                                      )
9   RELIANCE STANDARD LIFE            )
    INSURANCE COMPANY, et. al.,       )
10                                    )
                   Defendants.        )
11  _____     )

12          Before the Court is Defendant Tutor Perini Corporation's ("Tutor") Motion to

13  Dismiss (Doc. #6), filed on April 8, 2011.  Plaintiff Curtis Wimberly ("Wimberly") filed an

14  Opposition (Doc. #7) on April 25, 2011.  Tutor filed a Reply (Doc. #8) on May 5, 2011.

15  This Court held a hearing on this motion on June 30, 2011.  (Mins. of Proceedings (Doc.

16  #14).)

17  **I. BACKGROUND**

18          Wimberly worked for Tutor as a General Superintendent beginning March 22,

19  2004.  (Notice of Removal (Doc. #1), Ex. A ["Pl.'s Compl."] ¶ 14.)  One term of his

20  employment was coverage for long term disability under a plan administered by Reliance

21  (the "Plan").  (Id. ¶ 7.)  During his employment, Tutor classified Wimberly's weekly

22  income into several categories, including $2596.16 for "Regular Hours," $635 for "Living

23  Allowance," $165 for "Tax Subsistence," $175 for "Subsistence Ntx," and $15.00 for a

24  "Company Vehicle."  (Id. ¶ 15.)  Tutor also provided Wimberly with life insurance

25  coverage, listed as another category on his paycheck titled "Executive Life," and valued at

26  $9.45.  (Id. ¶¶ 15-16.)  To be qualified for Executive Life insurance, an employee had to

have a base income in excess of $150,000.  (Id.)  However, Tutor employees employed prior to January 1, 2010, like Wimberly, were "grandfathered in" to this policy.  (Notice of Manual Filing (Doc. #13) ["Ex. 1"] at 181.)  The minimum salary required to be "grandfathered in" under this change was $135,000.  (Id.)  Wimberly's gross weekly pay, factoring in each separate category, was $3596.11.  (Id. at 005-06.)

Wimberly became disabled as a result of surgery to correct a "heart condition" as well as unrelated "degenerative disc disease."  (Pl.'s Compl. ¶ 17.)  Plaintiff filed a disability claim with Reliance and pursuant to Reliance's request, Tutor produced employment records for Wimberly showing his monthly wages were $10,384.64.  (Pl.'s Compl. ¶¶ 18-19; Ex. 1 at 106.)

In the event of an employee becoming disabled, the Plan provided for a Monthly Benefit which is calculated by first "multiply[ing] an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits Page."  (Ex. 1 at 031.)  The Plan defines "Covered Monthly Earnings" as "the insured's monthly salary . . . prior to any deductions to a 401(k) or Section 125 plan . . . [and] does not include commissions, overtime pay, bonuses or any other special compensation not received as 'Covered Monthly Earnings.'"  (Pl.'s Compl. ¶ 20.)  Reliance calculated Wimberly's monthly wages at $11,250.03, approved the claim, and began payment on January 23, 2010.  (Id. ¶¶ 21-22.)

Wimberly appealed Reliance's determination regarding the amount of his monthly benefit and submitted further documentation supporting his contention that his base monthly salary was actually $15,583.14.  (Id. ¶¶ 23-24.)  Wimberly based his appeal on his long-term receipt of additional benefits, such as his Living Allowance and Tax Subsistence, that he received "regularly and steadily" since 2005.  (Ex. 1 at 002.)  Reliance rejected this contention, maintaining that only Wimberly's Regular Hours were included under its definition of Covered Monthly Earnings.  (Id. at 002-03.)  Wimberly sought to return to work at Tutor following medical leave, but Tutor "found no worksite modification

program acceptable." (Pl.'s Compl. ¶¶ 25-26.)  Wimberly's employment at Tutor ended on

March 30, 2010.  (Ex. 1 at 135.)  Reliance denied Wimberly's appeal.  (Pl.'s Compl. ¶ 28.)

Wimberly brought suit against Reliance and Tutor in the Eighth Judicial District

Court of Nevada.  (Id. ¶¶ 30-46.)  Wimberly alleged that Reliance violated the Employee

Retirement Investment Securities Act ("ERISA") by paying less disability benefits than he

is due and that Tutor interfered with his protected rights under section 510 of ERISA.  (Id.

¶¶ 39-43.)  Reliance removed the action to this Court.  (Notice of Removal.)

Tutor now moves to dismiss, arguing that Wimberly failed to plead that he was

discharged or suffered any other adverse employment action in violation of section 510 of

ERISA.  Tutor also argues that Wimberly failed to allege Tutor's specific intent to deprive

him of his ERISA benefits.  Tutor thus argues that Wimberly failed to make any factual

allegations concerning any interference by Tutor with Wimberly's ERISA benefits,

intentional or otherwise.  Additionally, Tutor argues that the Complaint's allegation that

Tutor failed to disclose all documentation and thereby prevented Plaintiff from perfecting

his claim is contradicted by the exhibits attached to the Complaint, documents that Reliance

reviewed and considered during Wimberly's administrative appeal.  Tutor argues that this

contradiction means that Plaintiff effectively pled himself out of his claim because his

factual allegations are directly controverted by documents attached to the Complaint.[1]

Tutor also argues that Wimberly's claim for attorney's fees should be dismissed along with

the Complaint.

///

---

[1]  At the motion to dismiss stage, this Court may consider the Complaint and any attached exhibits supporting those allegations in ruling on a motion to dismiss without converting it to a summary judgment motion.  U.S. v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003).  The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998).

Wimberly responds by arguing that the "straight math" taken from the documents submitted with the Complaint show Tutor's "self-serving under-reporting in order to reduce premium payments." (Pl.'s Opp'n (Doc. #7) at 6.) Wimberly argues that the circumstances underlying the Complaint demonstrate Tutor's specific intent to interfere with Wimberly's rights. Wimberly argues further that dismissing the claim for attorney's fees and costs would be premature.

## II. DISCUSSION

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court views the complaint's allegations in the light most favorable to the plaintiff. Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005). The complaint need not contain "detailed factual allegations," but it must provide more than labels, conclusions, and a "formulaic recitation of the elements." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Factual allegations must be sufficient to rise above the speculative level, and the complaint must allege sufficient facts to establish a plausible claim for relief. Id.; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

### A. ERISA Section 510 - Interference

Tutor argues that Wimberly failed to allege any facts that demonstrate an adverse employment action by Tutor against Wimberly for exercise of his ERISA rights. Tutor argues the only allegation in the Complaint is that Tutor failed to provide the appropriate documentation to Reliance and that this failure prevented Wimberly from perfecting his claim. Tutor contends the alleged failure to provide information does not constitute an adverse employment action under section 510 of ERISA. Tutor also contends that its mere alleged failure to provide the documentation to Reliance does not support an inference that it did so with the specific intent to interfere with Plaintiff's ERISA rights.

Wimberly responds that the Complaint alleges facts, including the "straight math" from his exhibits, which show Tutor's self-serving under-reporting to reduce

premium payments.  Plaintiff restates this argument later in his opposition, stating that the circumstances demonstrate Tutor's specific intent to reduce premium payments directly resulting in reducing Wimberly's benefits.

Section 510 of ERISA provides that:

> [i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under [a qualifying plan] . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.  Discrimination under this section manifests in two ways: discrimination "with the purpose of interfering with an employee's exercise of certain rights," and discrimination "with the purpose of interfering with an employee's attainment of certain rights."  Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1482 (4th Cir. 1996) (en banc) (emphasis omitted).

Courts use the McDonnell Douglas[2] burden shifting framework "for assessing an employer's liability for discriminatory interference with a plaintiff's exercise of protected rights under section 510," when there is no direct evidence of discrimination. Lessard v. Applied Risk Mgmt., 307 F.3d 1020, 1025 (9th Cir. 2002).  The typical McDonnell Douglas burden shifting framework requires a plaintiff to set forth a prima facie case creating a presumption that the employer discriminated against the employee. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  The burden then shifts to the defendant to establish a legitimate, nondiscriminatory reason for the action taken.  Id. at 254-55.  If a defendant can present such a reason, the burden shifts back to the plaintiff to show that the proffered reason is pretext for discrimination.  Id. at 256.

To establish a prima facie case of interference with the exercise of ERISA rights, the plaintiff must show (1) he participated in statutorily protected activity, (2) he

---

[2]  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

suffered a statutorily prohibited action, and (3) a causal relationship between the two.[3]
Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 881 (9th Cir. 1989).  Additionally, the
defendant must have acted with "specific intent to interfere with the rights under an
employer's benefits plan in violation of ERISA."  Id. at 881.

Most cases alleging interference with ERISA rights involve a termination of
employment.  See Bang v. IBM Corp., 600 F. Supp. 2d 430 (E.D.N.Y. 2009) (holding that
plaintiff presented evidence creating a genuine issue of material fact that his termination
less than one year before his benefits vested was motivated by a specific intent to deprive
him of his benefits).  Discharge is not the only action proscribed by section 510, however.
For example, some courts have held that reduced salary and threats of termination or
allegations of employer fraud during the benefit sign-up period would violate section 510.
See Tavoloni v. Mount Sinai Med. Ctr., 984 F. Supp. 196, 206-07 (S.D.N.Y. 1997)
(holding that a medical school professor stated a section 510 claim by alleging that his
employer reduced his salary and threatened termination as a means to reduce the
employer's contributions to an ERISA qualified plan); Healy v. Axelrod Constr. Co.
Defined Benefit Pension Plan & Trust, 787 F. Supp. 838, 841 (N.D. Ill. 1992) (holding a
retiree stated a section 510 claim by alleging that his employer fraudulently induced him to
sign a waiver of his participation in an ERISA qualified retirement plan).  However, at
least one court has held that a reduction of benefits did not violate section 510 without
further evidence of an employer's specific intent to discriminate against individual
employees.  Degrooth v. Gen. Dynamics Corp., 837 F. Supp. 485, 488-89 (D. Conn. 1993).

---

[3] Kimbro refers generally to the statutorily prohibited activity as "adverse employment
actions."  889 F.2d at 881.  However, the statute does not use the term "adverse employment
action."  Rather, the statute delineates several categories of prohibited activity constituting
interference with ERISA rights.   Therefore, a plaintiff needs to allege only some form of
interference under the statutory language of section 510, rather than an "adverse employment
action" akin to employment discrimination jurisprudence under Title VII.

As to specific intent, speculative allegations are insufficient to establish an employer's specific intent for interfering with an employee's rights under ERISA, though a short, plain statement may be sufficient.  For example, in <u>Simmons v. Wilcox</u>, an assistant executive director was terminated for her "inability to meet deadlines and unwillingness to follow orders."  911 F.2d 1077, 1079 (5th Cir. 1990).  In ruling in favor of the employer on summary judgment, the Fifth Circuit held the terminated employee failed to demonstrate her former employer's specific intent to interfere with her ERISA rights by terminating her because her "speculative allegations" that her employer had something to gain were insufficient when the record was "wholly devoid of any evidence supporting an inference of such an intent."  <u>Id.</u> at 1082.  However, in <u>Maczko v. Ford Motor Co.</u>, the plaintiffs' statement that their employer reclassified them as "rehires" instead of "transfer[s]" with the intent to deprive them of severance pay in violation of their ERISA rights was sufficient to state a claim and survive a motion to dismiss.  No. 08-13819, 2010 WL 5211451, at *5 (E.D. Mich. Dec. 16, 2010) (slip copy).

Plaintiff's Complaint does not allege or imply that Wimberly was fined, suspended, expelled, or disciplined in violation of the statute.  Plaintiff's Complaint does allege that his employment with Tutor was terminated, but his discharge is not the alleged action violating section 510.  Plaintiff's allegation is that Tutor's misrepresentation of his salary led to an adverse benefits determination.

Whether this conduct could amount to a prohibited activity is tied to whether the employer acted with specific intent.  However, Plaintiff's Complaint fails to allege Tutor's specific intent for taking any such action against Wimberly.  Plaintiff argues that Tutor under reported Wimberly's income to lower Wimberly's benefits and therefore reduce the premiums that it would pay.  However, Plaintiff failed to plead this in the Complaint.  The Complaint alleges only that Tutor misrepresented Wimberly's salary and that his benefits determination was adversely affected as a result.  Even under <u>Maczko</u>, Plaintiff fails to

allege that Tutor undertook any actions against Wimberly with the specific intent to deprive him of his ERISA rights.  The Court therefore will dismiss Plaintiff's section 510 claim against Tutor for failure to allege Tutor's specific intent to deprive Wimberly of his ERISA rights.

### B. Inconsistencies Between the Complaint and its Attached Exhibits

Tutor also argues that the factual allegations in Plaintiff's Complaint are contradicted by the exhibits attached to the Complaint.  Plaintiff alleges that Tutor "failed to disclose all documentation and thereby prevented Plaintiff from perfecting his claim." (Pl.'s Compl. ¶ 43.)  Tutor contrasts that allegation with one of the documents Wimberly attached to the Complaint, in which Reliance acknowledged Wimberly's contention that the Covered Monthly Earnings determination should be based on his total compensation package and not "Regular Hours."  Tutor thus contends that Plaintiff's own document shows Reliance in fact had access to the information that Tutor allegedly failed to provide and used that information to render its benefit determination.  Wimberly responds that Reliance was forced to make its determinations "based on assumption" as a result of Tutor's failure to supply information because Tutor did not provide certain documents to Wimberly's counsel until after the administrative record closed before Reliance.

The $10,384.64 Tutor filled in on the Reliance claim form is seemingly inconsistent with Reliance's determination of $11,250.03.  In fact, the weekly Regular Hours amount accounts for both numbers depending on the arithmetic used.   Tutor's arithmetic is not evident in the record, but the Regular Hours amount totaling $2,596.16 per week multiplied by four weeks in a month totals $10,384.64.  Reliance's calculation is to multiply the $2596.16 by 52 weeks, then divide by twelve months, netting the $11,250.03 figure.  Thus, to the extent that Plaintiff is claiming this is the relevant discrepancy, Plaintiff has no claim, as Reliance awarded him the higher figure.

///

However, the Court understands Plaintiff's contention to be that Tutor misrepresented Wimberly's salary by not submitting documentation to Reliance that classified Wimberly's gross income of $3596.11 per week as the appropriate base number for determining his monthly benefit.  Plaintiff does not make clear exactly what information Tutor failed to provide to Reliance that Reliance did not already possess in making its benefits determination.  Reliance had pay stubs, W-2s, payroll and other records, which showed the difference between the $11,250.03 and $15,583.14 numbers was the various categories of pay other than Wimberly's "Regular Hours."

Reliance therefore had Wimberly's salary information via pay stubs and tax returns and Plaintiff has failed to identify what information Tutor failed to provide Reliance or how that information would have made a difference in Reliance's benefit determination.  The Complaint's allegations are contradicted by the attached exhibits, and the Court therefore will dismiss the section 510 claim against Tutor for this additional reason.  Because the parties agree the request for attorney's fees is dependent upon the substantive claim, the Court also will dismiss Wimberly's claim for attorney's fees against Tutor.

**C. Amendment**

Plaintiff does not request leave to amend the Complaint.  At oral argument, Plaintiff failed to explain any way he could amend his Complaint to fix the contradictions between the exhibits and Plaintiff's Complaint.  Given the defects in the Complaint and the futility of amendment, the Court will dismiss with prejudice.

///
///
///
///
///

9

**III. CONCLUSION**

   IT IS THEREFORE ORDERED that Defendant Tutor Perini Corporation's Motion to Dismiss is hereby GRANTED.  Plaintiff Curtis Wimberly's claims against Defendant Tutor Perini Corporation are hereby dismissed with prejudice.


DATED: July 14, 2011


          _____
          PHILIP M. PRO
          United States District Judge